UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO.

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **BILL OF INDICTMENT** |
| ) | |
| ) | Violation: |
| v. ) | 18 U.S.C. § 2319 |
| ) | 18 U.S.C. § 371 |
| ) | 18 U.S.C. § 2 |
| DAVID LEE PRUETT ) | 17 U.S.C. § 506 |

3:05cr286-C

THE GRAND JURY CHARGES:

## BACKGROUND

At all times relevant to this Information:

1. During the 1990s, individuals skilled in cracking digital copyright protection systems organized themselves into national and international groups called "warez" groups after the term "soft*ware*." These groups are dedicated to intellectual property "piracy," that is, the unauthorized, illegal reproduction and distribution of copyrighted computer software, including games, and digital entertainment, including movies and music. Warez groups distribute pirated software, movies and music over the Internet, and compete with one another to be the first to release new, high quality pirated products, within an elaborate underground Internet society, known as the "warez scene." Due in part to the activities of warez groups, pirated versions of software applications, movies and music are available worldwide, electronically and on optical disc, sometimes even before they are made commercially available to the public.

2. Warez groups are often structured, hierarchical organizations comprised of members in various countries who have specialized skills and roles in the piracy of digitized intellectual property. Some warez groups specialize in obtaining "pre-release" intellectual property for piracy, often from company or distribution insiders, or software testers, who have access to final versions of new products which have yet to be released to the public.

Other warez groups concentrate on "cracking" copyright protection systems by removing or otherwise circumventing copyright protection controls like encryption, serial numbers, tags, duplication controls, and/or security locks. Still other groups act as couriers, distributing pirated intellectual property over the Internet to warez sites worldwide.

3. Warez members typically store their pirated intellectual property on servers employing a protocol known as a file transfer protocol ("FTP") which allows other individuals to download pirated product from, and upload pirated product to, that server. Access to warez FTP servers, or sites, is nearly always password-protected, and many warez groups protect large FTP archive sites, containing tens of thousands of files of pirated software, movies and music, through a combination of sophisticated security measures.

4. Members of the warez scene frequently communicate with each other over the Internet using "real time" software applications and closed channels, such as "Internet Relay Chat" ("IRC"), as well as encryption to avoid detection by law enforcement. As a further security precaution, most warez members conceal their Internet identities by assuming aliases, and many disguise their Internet addresses, and thus their true locations, by routing Internet communications through another computer known as a "virtual host" or "bounce box" which is configured to appear falsely as the source of the communication.

5. The reasons why individuals become members of warez groups vary. Common to virtually all warez members, however, is the desire for personal financial gain through access to vast quantities of free software, movies and music available on warez FTP sites. A few of the larger warez groups also sell their pirated product for commercial gain. Other motives in addition to profit include the thrill and social comradery members obtain through clandestine participation in the illegal activity, and the reputation and fame that attends membership and participation in the "top" warez groups.

2

## COUNT ONE
(Conspiracy)

6. Paragraphs one through five of this Indictment are hereby realleged and incorporated as if fully set forth herein.

### I. Object of the Conspiracy

7. From in or before January 2003 through April 21, 2004, both dates being approximate and inclusive, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendant,

### DAVID LEE PRUETT,

did knowingly and voluntarily combine, conspire, confederate, and agree with others known and unknown to the grand jury willfully, and for purposes of private financial gain, to infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500, in violation of Title 18, United States Code, Section 2319(a), (b)(1) and (c)(1), and Title 17, United States Code, Section 506(a)(1) and (a)(2).

### II. Defendant's Manner and Means within the Conspiracy

8. The ways, manner and means by which the defendant, DAVID LEE PRUETT, sought to achieve the objects of this conspiracy included, but were not limited to, the following:

    a. It was a part of the conspiracy that the defendant, DAVID LEE PRUETT, would be a member of and participate in a warez group and the warez scene.

    b. It was further a part of the conspiracy that the defendant, DAVID LEE PRUETT, would communicate with other warez group members over the Internet using IRC channels and the Internet alias "Billdo."

    c. It was further a part of the conspiracy that the defendant, DAVID LEE

PRUETT, would use a "shell account" and "virtual host" to communicate with other warez group members over the Internet through the IRC channels.

  d. It was further a part of the conspiracy that the defendant, DAVID LEE PRUETT, would download from warez sites and test pre-release or newly released pirated software that another warez member had "cracked" to ensure that the software continued to function after its copyright protection controls had been removed or circumvented.

  e. It was further a part of the conspiracy that the defendant, DAVID LEE PRUETT, would upload the pirated, pre-release or newly released "cracked" software to warez sites for further distribution after he had tested it to ensure its functionality.

  f. It was further a part of the conspiracy that the defendant, DAVID LEE PRUETT, would download pirated copyright-protected digital titles, consisting of software applications, movies and music, from warez FTP sites for his own personal use.

### III. Overt Acts

  9. In furtherance of the conspiracy, and to accomplish its unlawful objectives, the defendant, DAVID LEE PRUETT, from January 4, 2003, through September 26, 2003, in the Western District of North Carolina and elsewhere, uploaded or caused to be uploaded approximately 4 digital files, consisting of pirated, copyright-protected software applications and music, to a warez FTP site and, from January 16, 2003, through April 15, 2004, in the Western District of North Carolina and elsewhere, downloaded or caused to be downloaded hundreds of digital files, consisting of pirated, copyright-protected software applications, movies, and music, from a warez FTP site, and each such upload and download constituted an overt act. Among these overt acts, to enumerate but a few, were the following:

  a. January 18, 2003, the defendant, DAVID LEE PRUETT, downloaded or caused to be downloaded from a warez FTP server, located in the Western District of

4

North Carolina, a pirated, copyright-protected digital title known as *SolidWorks v2003*.

      b.      On July 11, 2003, the defendant, DAVID LEE PRUETT, uploaded or caused to be uploaded to a warez FTP server, located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *Cimatron v13.1*.

      c.      On October 3, 2003, the defendant, DAVID LEE PRUETT, downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *Mastercam v9.1*.

      d.      On November 10, 2003, the defendant, DAVID LEE PRUETT, downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *Microsoft Office XP Professional*.

      e.      On December 5, 2003, the defendant, DAVID LEE PRUETT, downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *Adobe Photoshop CS v8.0*.

      f.      On February 26, 2004, the defendant, DAVID LEE PRUETT, downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *Autodesk Inventor Pro v7*.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO
(Copyright Infringement)

10.    Paragraphs one through five of this Indictment are hereby realleged and incorporated as if fully set forth herein.

11.    From on or about January 4, 2003, through June 30, 2003, in Mecklenburg

County, in the Western District of North Carolina, and elsewhere, the defendant,

DAVID LEE PRUETT,

willfully, and for purposes of private financial gain, did infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500.

All in violation of Title 18, United States Code, Sections 2319(a), (b)(1) and (c)(1) and 2, and Title 17, United States Code, Section 506(a)(1) and (a)(2).

## COUNT THREE
(Copyright Infringement)

12. Paragraphs one through five of this Indictment are hereby realleged and incorporated as if fully set forth herein.

13. From on or about July 1, 2003, through December 25, 2003, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendant,

DAVID LEE PRUETT,

willfully, and for purposes of private financial gain, did infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500.

All in violation of Title 18, United States Code, Sections 2319(a), (b)(1) and (c)(1) and 2, and Title 17, United States Code, Section 506(a)(1) and (a)(2).

## COUNT FOUR
(Copyright Infringement)

14. Paragraphs one through five of this Indictment are hereby realleged and incorporated as if fully set forth herein.

15. From on or about December 26, 2003, through April 15, 2004, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendant,

DAVID LEE PRUETT,

willfully, and for purposes of private financial gain, did infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500.

All in violation of Title 18, United States Code, Sections 2319(a), (b)(1) and (c)(1) and 2, and Title 17, United States Code, Section 506(a)(1) and (a)(2).

## Forfeiture Allegations

16. Paragraphs one through fifteen of this Indictment are hereby realleged and incorporated as if fully set forth herein.

17. Pursuant to Title 17, United States Code, Section 506(b), upon conviction of any of the offenses set forth in this Indictment, the defendant,

DAVID LEE PRUETT,

shall forfeit all infringing copies and implements, devices, and equipment used in the manufacture of such infringing copies. Such property includes, but is not limited to, the following items seized by federal agents from the premises located at 920 31st Street, NE,

Apartment D, Auburn, Washington, on April 21, 2004, during the execution of a search warrant:

1. One BCI mid tower personal computer, serial number ECDG020622.
2. One Maxtor model 92040U6 hard drive, serial number C60256JC.
3. One Maxtor model 91366U4 hard drive, serial number H405KDXC.
4. 108 CDs and cases with various labels.

DATED:

A TRUE BILL.

FOREPERSON

GRETCHEN C. F. SHAPPERT
United States Attorney

COREY F. ELLIS
Assistant United States Attorney

ERIC J. KLUMB
Senior Counsel
U.S. Department of Justice